IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ROSEANN MARIE ZIRNSAK,  )
        Plaintiff,  )
        )
    v.  )        2:13-CV-303
        )
        )
COMMISSIONER OF SOCIAL  )
SECURITY,  )
        Defendant.  )

REPORT AND RECOMMENDATION

I.    Recommendation

It is respectfully recommended that the plaintiff's motion for summary judgment (ECF 7) be denied; that the defendant's motion for summary judgment (ECF 11 be granted, and that the decision of the Commissioner be affirmed.

II.    Report

Presently before the Court for disposition are cross motions for summary judgment.

On March 1, 2013, Roseann Marie Zirnsak by her counsel, filed a complaint pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. §405(g) for review of the Commissioner's final determination disallowing her claim for a period of disability or for disability insurance benefits under Sections 216(i) and 223 of the Social Security Act, as amended, 42 U.S.C. §§416(i) and 423.

On January 6, 2010, the plaintiff filed an application for disability benefits alleging that she had been disabled since October 8, 2001 (R.128-131). At the hearing the alleged onset date was modified to May 5, 2006 (R.31-32). Benefits were denied on May 17, 2010 (R.73-78). On

1

June 14, 2010 the plaintiff requested a hearing (R.83-86) and pursuant to that request a hearing was held on June 22, 2011 (R.28-60). In a decision dated July 15, 2011, benefits were denied (R.9-22), and on August 22, 2011, reconsideration was requested (R.6-7). Upon reconsideration and in a decision dated January 9, 2013, the Appeals Council affirmed the prior determination (R.1-3). On March 1, 2013, the instant complaint was filed.

In reviewing an administrative determination of the Commissioner, the question before any court is whether there is substantial evidence in the agency record to support the findings of the Commissioner that the plaintiff failed to sustain her burden of demonstrating that she was disabled within the meaning of the Social Security Act. In the instant case as a result of benefits having been previously denied on May 11, 2006 (R.65-69) the question is whether or not the plaintiff has demonstrated that she became disabled between the latter date and the date she last met the special earnings requirement of the Act, December 2007.

It is provided in 42 U.S.C. Section 405(g) that:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive....

Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, Johnson v. Comm'r. 529 F.3d 198 (3d Cir.2008), and the court may not set aside a decision supported by substantial evidence. Hartranft v. Apfel, 181 F.3d 358 (3d Cir.1999).

At the hearing held on June 22, 2011, (R.28-60), the plaintiff appeared with counsel (R.28) and testified that she was born on July 1, 1958 (R.33); that she completed 10th grade (R.33) and that she worked as a bookkeeper and clerk until 1989 (R.34).

2

The plaintiff also testified that she had a seizure in 2003 (R.35); that she has a bad hip (R.37); that between 2006 and 2007 her husband performed most of the household chores (R.37-38); that she was able to sit for between twenty and forty minutes, walk about one hundred yards and lift five to ten pounds (R.42-43); that she was easily agitated (R.43-44), and that she was unable to concentrate (R.46).

The plaintiff's husband testified that she only performed limited driving and housekeeping during the relevant time period (R.48-51); that she lacked short-term memory (R.53) and that she had a walking problem (R.54).

At the hearing a vocational expert was called upon to testify (R.56-59). The witness described the plaintiff's prior work as sedentary and semi-skilled (R.56). The witness was asked to assume an individual who was 52 years old, with a high-school equivalency education and sedentary semi-skilled work experience who was limited to performing sedentary work with simple repetitive tasks (R.57) and she responded that such an individual could not perform the plaintiff's prior work (R.57) but that there were a large number of unskilled jobs that she could perform (R.57-58). However, if the individual had to absent herself from work on an irregular random basis three or more times a month or had to be off-task frequently, the expert testified that she would not be employable (R.58).

The issue before the Court for immediate resolution is a determination of whether or not there is substantial evidence to support the findings of the Commissioner that the plaintiff was not disabled within the meaning of the Act during the period between May 11, 2006 and December, 2007.

The term "disability" is defined in 42 U.S.C. Section 423(d) (1)(A) as:

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months....

For purposes of the foregoing, the requirements for a disability determination are provided in 42 U.S.C. Section 423(d)(2)(A):

An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence ... "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

A "physical or mental impairment" is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. Section 423(d)(3). These provisions are also applied for purposes of establishing a period of disability. 42 U.S.C. Section 416(i)(2)(A).

While these statutory provisions have been regarded as "very harsh," nevertheless, they must be followed by the courts. NLRB v. Staiman Brothers, 466 F.2d 564 (3d Cir. 1972); Choratch v. Finch, 438 F.2d 342 (3d Cir. 1971); Woods v. Finch, 428 F.2d 469 (3d Cir. 1970). Thus, it must be determined whether or not there is substantial evidence in the record to support the conclusion of the Commissioner that the plaintiff was not disabled within the meaning of the Social Security Act.

For this purpose, certain medical evidence was reviewed.

The plaintiff was hospitalized at Allegheny General Hospital from October 8, 2001 through November 14, 2001 following a motor vehicle accident where she sustained multiple severe injuries. Initially she was on life support after having sustained head and lung injuries as well as several skeletal fractures and breathing problems. Upon discharge she was transferred to a rehabilitation facility (R.73-433, 454-616).

The plaintiff was hospitalized at Allegheny General Hospital from November 18, 2001 through November 23, 2001 for removal of a gangrenous gallbladder. Upon discharge she was returned to the rehabilitation facility (R.434-453, 633-639).

The records from Allegheny General Hospital for the period from October 8, 2001 through February 9, 2003 in addition to post-motor vehicle accident treatment also demonstrate treatment for a seizure on February 9, 2003 for which Dilantin was prescribed (R.454-645).

In a neurological report dated February 14, 2003, Dr. Thomas F. Scott noted a history of seizures following a motor vehicle accident. Dilantin was recommended (R.193-194).

In a neurological report of an examination conducted on August 18, 2003, Kevin M. Kelly, M.D., Ph.D. noted that the plaintiff had not suffered any seizures since her initial seizure and was on medication (R.191-192). The plaintiff was treated at Health South Harmarville Rehabilitation from January 16, 2002 through October 18, 2005. She was an inpatient from January 16, 2002 through January 26, 2002 (R.646-760).

The plaintiff underwent plastic surgery treatments between January 6, 2005 and August 11, 2006 for lipoma reductions as well as cosmetic purposes (R.961-968).

The issue before the Court is whether there is substantial evidence in the record to support the conclusion that the plaintiff was not disabled during the period from May 11, 2006 through December 31, 2007 (R.32).

A CT brain scan performed on May 21, 2009 demonstrated a right frontal lobe encephalomalaic area and moderate prominent ventricles (R.774-776).

In a report covering the period from October 31, 2004 through December 4, 2009, a diagnosis of traumatic brain injury and left hemiparesis was made. It was concluded on October 31, 2004 that the plaintiff was permanently disabled (R.969-971).

The plaintiff was treated by Dr. Thomas Franz between February 22, 2002 and February 3, 2010 for her traumatic brain injury, left hemiparesis cognitive impairments with short term memory deficits, organic affective changes and a seizure disorder (R.777-869).

Kevin M. Kelly, M.D., Ph.D. treated the plaintiff between February 14, 2003 and February 4, 2010. He diagnosed a new seizure disorder and recommended the use of Dilantin (R.870-883).

In a report of clinical evaluations conducted between April 4, 2010 and April 6, 2010, David T. Newman, Ph.D. noted a suggestion of mild short-term memory loss and a concentration deficit (R. 884-888).

In a mental residual functional capacity assessment completed on April 8, 2010, Michelle Santilli, Psy. D. only partially credited the plaintiff's statements and concluded that the plaintiff was able to perform the basic mental demands of competitive work on a sustained basis. She diagnosed an organic mental disease demonstrated by memory impairment. Any limitations were said to be mild to moderate (R.889-905).

The plaintiff attended physical therapy between February 14, 2010 and April 21, 2010. On March 15, 2010 it was observed that she had made "very good" progress with the ability to stand on one leg (R.906-960).

The plaintiff was treated by Michael Fiorina, D.O., between April 5, 2000 and June 17, 2010 for abdominal and chest discomfort, a fall, hypothyroidism, arthritis and bladder incontinence (R.972-984).

A left hip MRI taken on September 23, 2010 revealed old left pubic rami fractures; a left hip x-ray taken on January 29, 2007 revealed the old left pubic rami fracture and a head CT scan taken on May 29, 2002 revealed a right frontal lobe attenuation with calcification and early encelhalomalacia (R.985-992).

The plaintiff attended physical therapy between February 17, 2010 and April 15, 2011. She reported less pain when walking (R.993-1034).

The plaintiff was treated at Choice Care Physicians between September 21, 2010 and April 27, 2011. She was fitted for new orthotics and treated for bursitis and hip pain. Medication was prescribed (R.1035-1061).

In reviewing a disability claim, in addition to considering the medical and vocational evidence, the Commissioner must consider subjective symptoms. Baerga v. Richardson, 500 F.2d 309 (3d Cir. 1974). As the court stated in Bittel v. Richardson, 441 F.2d 1193, 1195 (3d Cir. 1971):

> Symptoms which are real to the claimant, although unaccompanied by objective medical data, may support a claim for disability benefits, providing, of course, the claimant satisfies the requisite burden of proof.

In Good v. Weinberger, 389 F. Supp. 350, 353 (W.D. Pa. 1975), the Court stated:

> Bittel seeks to help those claimants with cases that so often fall within the spirit-- but not the letter--of the Act. That plaintiff did not satisfy the factfinder in this regard, so long as proper criteria were used, is not for us to question.

The applicable regulations require more explicit findings concerning the various vocational facts which the Act requires to be considered in making findings of disability in some

7

cases. The regulations, published at 20 C.F.R. §§404.1501, *et seq.*, set forth an orderly and logical sequential process for evaluating all disability claims. In this sequence, the Administrative Law Judge must first decide whether the plaintiff is engaging in substantial gainful activity. If not, then the severity of the plaintiff's impairment must be considered. If the impairment is severe, then it must be determined whether she meets or equals the "Listings of Impairments" in Appendix 1 of the Regulations which the Commissioner has deemed of sufficient severity to establish disability. If the impairment does not meet or equal the Listings, then it must be ascertained whether she can do her past relevant work. If not, then the residual functional capacity of the plaintiff must be ascertained, considering all the medical evidence in the file. The finding of residual functional capacity is the key to the remainder of findings under the new regulations. If the plaintiff's impairment is exertional only, (i.e. one which limits the strength she can exert in engaging in work activity), and if her impairment enables her to do sustained work of a sedentary, light or medium nature, and the findings of age, education and work experience, made by the Administrative Law Judge coincide precisely with one of the rules set forth in Appendix 2 to the regulations, an appropriate finding is made. If the facts of the specific case do not coincide with the parameters of one of the rules, or if the plaintiff has mixed exertional and non-exertional impairments, then the rules in Appendix 2 are used as guidelines in assisting the Administrative Law Judge to properly weigh all relevant medical and vocational facts.

> Based on the evidence presented, the Commissioner concluded:
>
> The claimant last met the insured status requirements of the Social Security Act on December 31, 2007.

The claimant did not engage in substantial gainful activity during the period from her amended alleged onset date of May 11, 2006 through her date last insured of December 31, 2007.

Through the date last insured, the claimant had the following severe impairments: left hemiplegia, history of seizures and organic affective disorder.

These impairments are established by the medical evidence and were "severe" within the meaning of the Regulations because they more than minimally limited the claimant's ability to perform basic work activities.

Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments …

Listing 11.02 was not met because the record does not demonstrate convulsive epilepsy … documented by detailed description of a typical seizure pattern…

Listing 11.04 was not met because the record does not establish that the claimant has had a central nervous system vascular accident with one of the following more than 3 months post-vascular accident: A. Sensory or motor aphasia resulting in ineffective speech or communications; or B. Significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station.

The claimant's mental impairments did not meet or medically equal the criteria of listings 12.02 and 12.04… the mental impairment must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. A marked limitation means more than moderate but less than extreme…

In activities of daily living, the claimant had mild restriction…

In social functioning, the claimant had mild difficulties…

With regard to concentration, persistence or pace, the claimant had moderate difficulties. The claimant stated that she was limited in concentration. However, she reported that she was able to start and complete projects and had no trouble understanding and carrying out instructions…

As for episodes of decompensation, the claimant had experienced no episodes of decompensation, which have been of extended duration ...

The claimant's disorders did not cause a medically documented history of a chronic mental or affective disorder of at least 2 years duration that has caused more than a minimal limitation of ability to do basic work activities…

After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work…

The claimant alleges disability due to neurological problems, traumatic brain injury, short-term memory loss, headaches, seizures and balance problems. ..

After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

In terms of the objective evidence, the claimant's limited medical history is inconsistent with and unsupportive of the claimant's allegations of disability. The claimant's medical record establishes that the claimant's impairments did not prevent her from engaging in work within the residual functional capacity as stated above through the date last insured. The claimant underwent a bilateral suction assisted lipectomy, trochanteric areas in March of 2006 without significant complication. Following the surgery, the claimant was noted to be doing well. The claimant saw Kevin Kelly, M.D., on May 6, 2006, Dr. Kelly noted the claimant had no seizures and was doing very well. Dr. Kelly diagnosed the claimant with optimal seizure control and continued the claimant's treatment. The claimant complained of fat regrowing out on her left hip on June 16, 2006. The claimant saw Thomas Franz, M.D., for an annual visit on July 14, 2006. Dr. Franz noted the claimant was taking medications. He further noted the claimant had no seizures. He did not change the claimant's treatment. The claimant underwent suction assisted lipectomy left hip without significant complications on July 21, 2006. The claimant was noted to be doing well on July 28, 2006 and August 11, 2006.

The claimant's conservative physical treatment continued into 2007. The claimant saw Michael Fiorina, D.O., after falling in January of 2007. The claimant complained of pain in her knees, palms and hips. Upon examination, the claimant had full range of motion of her hips and knees and had pain to palpation. Dr. Fiorina diagnosed the claimant with left hip pain, recommended x-rays and prescribed medications. X-rays of the claimant's left hip taken on March 29, 2007 displayed old, chronic appearing post-traumatic deformities in the left pubic rami and no acute bony abnormality in the hips or pelvis… The claimant had no seizures and was driving. Dr. Kelly stated the claimant's basic medical health was good. Dr. Kelly noted the claimant had no apparent side effects from treatment.

Dr. Kelly diagnosed the claimant with optimal seizure control and again continued the claimant's treatment. The claimant returned to Dr. Franz on July 20, 2007… The claimant was noted to have no seizures. The claimant was diagnosed with left hemiplegia and was prescribed medications. On September 5, 2007, the claimant complained of headaches and a heavy chest with deep breathing to Dr. Fiorina. Physical examination of the claimant was generally normal. Dr. Fiorina prescribed medications. The claimant complained of no new problems to Dr. Franz on October 12, 2007. Dr. Franz noted the claimant was "doing okay." The claimant had no seizures. Dr. Franz recommended a new prescription for orthosis. Dr. Franz also refilled the claimant's medication. Therefore, the objective evidence concerning the claimant's physical impairments is consistent with the claimant's residual functional capacity as determined.

In regards to the claimant's mental impairments, the objective medical record is unsupportive of the claimant's allegations of disabling mental impairments and is consistent with the above residual functional capacity through the date last insured. In July of 2006, Dr. Franz noted the claimant was oriented and calm with short-term memory. In January 2007, Dr. Fiorina noted the claimant was psychological[ly] appropriate. In July of 2007, the claimant complained of short-term memory problems. The claimant did not like the idea of taking antidepressant medication. Dr. Franz diagnosed the claimant with organic affective disorder. Dr. Franz prescribed Effexor. The claimant was again noted to be psychologically appropriate by Dr. Fiorina in September of 2007. In October of 2007, the claimant reported no new problems. The claimant also reported that Effexor did not help. Upon examination, the claimant was alert, oriented and calm with task and short-term memory problems. The claimant's treatment was not noted to be changed.

Finally, T. David Newman, Ph.D., completed a clinical psychological disability evaluation of the claimant on April 6, 2010. This evaluation is given little weight because it was completed considerably outside of the relevant period.

***

Accordingly, based on the substantial weight of the objective medical evidence, the claimant's course of treatment and her level of daily activity, I find that the claimant retained the residual functional capacity for work identified above through the date last insured…

Based on the testimony of the vocational expert, I conclude that, through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, the claimant was capable of making a successful adjustment to other work that existed in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the [rules].

> The claimant was not under a disability, as defined in the Social Security Act, at any time from May 11, 2006, the alleged onset date, through December 31, 2007, the date last insured. (R.14-22).

The issue before the Commissioner was a very limited one. The plaintiff had filed an earlier application for benefits which was ultimately denied on May 11, 2006. Thus, to demonstrate entitlement to benefits she must demonstrate that she was disabled from the latter date through the date she was last insured, i.e., December 31, 2007. The evidence here reveals that on October 8, 2001, the plaintiff was severely injured in a motor vehicle accident resulting in a long period of hospitalization and rehabilitation. However, we are bound by the decision that as of May 11, 2006 she was not disabled and the plaintiff concedes as much (R.31-32). From the evidence presented regarding the very limited time period in question here, it would appear that the plaintiff while experiencing some limitations still remained capable of engaging in some forms of gainful work activity. In addition, determinations of credibility rest with the Commissioner. Diaz v. Commissioner, 577 F3d 500, 506 (3d Cir.2009). For these reasons, the conclusion of the Commissioner is supported by substantial evidence.

Summary judgment is appropriate when there are no disputed material issues of fact, and the movant is entitled to judgment as a matter of law. Lichtenstein v. U.P.M.C, 691 F.3d 294, 300 (3d Cir. 2012). In the instant case, there are no material factual issues in dispute, and it appears that the Commissioner's conclusion that the plaintiff was not disabled during the limited period from May 11, 2006 through December 2007 is supported by substantial evidence. For this reason, it is recommended that the plaintiff's motion for summary judgment be denied; that the defendant's motion for summary judgment be granted, and that the decision of the Commissioner be affirmed.

Within fourteen (14) days after being served with a copy, any party may serve and file written objections to the report and recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to file timely objections may result in the waiver of any appellate rights.

Filed: August 12, 2013

Respectfully submitted,
s/ Robert C. Mitchell
United States Magistrate Judge